# THE BOARD OF SUPERVISORS OF SUFFOLK COUNTY, RESPONDENT, *v.* THE CITY OF KINGSTON, APPELLANT.

*The burden of supporting lunatics and insane persons residing in the city of Kingston is, by the provision of its charter (chap. 520 of 1879), imposed upon the city itself.*

In the year 1875 John Gill, a resident of the city of Kingston, after having been indicted in the county of Suffolk for an assault with intent to kill, was committed to the Hudson River State Asylum for the Insane by the county judge of Suffolk county, and was afterwards transferred to the Asylum for Insane Criminals, at Auburn, where he has since remained. The county of Suffolk, having paid $1,760.71 for his support and maintenance in the asylum, brought this action to recover the amount so paid from the city of Kingston

Upon the hearing of the appeal from a judgment overruling a demurrer interposed to the complaint, upon the ground that it did not state facts sufficient to constitute a cause of action, the defendant claimed that the liability for the maintenance of the insane criminals rested upon the county of Ulster, in the first instance, or on the commissioners of the Alms-house of the city of Kingston, and that no liability was imposed by the statute upon the city itself.

*Held,* that the judgment should be affirmed,

That, by sections 32, 63 and 69 of chapter 446 of the Laws of 1874, as amended by chapter 520 of 1879, the duty to raise money for the support of the poor of the city rested upon the city of Kingston.

APPEAL from an interlocutory judgment overruling a demurrer interposed to the complaint in this action upon the ground that it did not state a cause of action, entered in the county clerk's office of Suffolk county, on the 26th day of May, 1888.

*G. D. B. Hasbrouck,* for the appellant.

*Timothy M. Griffing* and *Richard L. Swezy,* for the respondent.

DYKMAN, J.:

In the year 1875 John Gill was indicted in the county of Suffolk for an assault with intent to kill, and was in confinement in the county jail of Suffolk county under that indictment. He was a resident of the city of Kingston, in Ulster county, and after his indictment he was committed to the Hudson River State Hospital for the Insane by the county judge of Suffolk county, and afterward he was transferred from that hospital to the Asylum for Insane Criminals at Auburn, where he has since remained. The county of Suffolk paid $1,760.71 for his support and maintenance in the asylum, and this action is brought for the purpose of recovering from the city of Kingston the amount so paid by the county of Suffolk for the support of such criminal.

These facts are substantially stated in the complaint in the action, and it was also stated that at the time of the commitment of Gill to the asylum, he did not have, and has not since had, sufficient means to support himself, nor any father or mother or children of sufficient financial ability. Is is also stated in the complaint that the claim of the county has been presented to the treasurer of the city for payment, and that no part of the claim has been paid.

The defendant interposed a demurrer to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action against the defendant. A trial has been had upon the demurrer, and judgment has been entered thereon in favor of the plaintiff, from which the defendant has appealed. It is the claim of the defendant that the liability for the maintenance of the insane criminal rests upon the county of Ulster in the first instance, or on the commissioners of the alms-house of the city of Kingston; and that no liability is imposed by the statute upon the city itself. This action is based upon the provisions of section 32

of title 1, article 2 of chapter 446 of the Laws of 1874, in relation to the care and custody of the insane. That section is as follows: "Whenever any insane person in confinement under indictment shall be committed, as hereinbefore recited, to any State lunatic asylum the county from which he is sent shall defray all the expenses of such person while at such asylum, and the expense of returning him to such county; but the county may recover the amount so paid from his own estate, or from any relative, town, city or county that would have been bound by existing laws to provide for and maintain him elsewhere." By section 67 of chapter 520 of the Laws of 1879, amending the act for the incorporation of Kingston into a city, "the city of Kingston, for all the purposes of supporting the poor within its limits, and in carrying into effect the laws of the State for the support and relief of indigent persons, and in relation to lunatics, deaf-mutes, blind, insane and idiotic poor persons of said city, shall be a separate and distinct district. The city of Kingston shall not hereafter be subject to any quota of county charges for the support of the poor, or lunatics, deaf-mutes, blind, insane and idiotic persons. Nor shall any other portion of the county be taxed or required to contribute to the support of the poor of the city of Kingston, or the support of lunatics, deaf-mutes, blind, insane or idiotic persons in or belonging to said city."

By sections 63 and 69 of the charter, as amended by the same chapter in 1879, the city is authorized and required to raise such sums as will be required to pay charges for the support of the city poor for the ensuing year; and, in addition thereto, such sums as shall be required to pay charges for the transportation, support and maintenance of lunatics, deaf-mutes, blind, insane and idiotic persons who may become a charge upon the said city. Under these statutory provisions the county of Suffolk may recover the moneys expended for the support of the insane convict at the State Asylum from the city, county or town that would be bound to provide for and maintain him as a pauper lunatic not under confinement or indictment for crime.

This conclusion is strengthened by the provisions of section 22 of the act of 1874, giving the right to the county from which an insane criminal is sent to the asylum to recover the amount paid for his support from any town, city or county that would have been bound by existing laws to provide for and maintain him elsewhere.

Our conclusion is that these provisions are sufficient to cast the obligation for support of this insane convict upon the city of Kingston. The contention of the defendant that the obligation was imposed upon the commissioners of the alms-house of the city of Kingston derives no support from the charter of that city. The statute imposes the care and management of the poor upon such commissioners, but they are required to furnish in each year to the mayor of the city an estimate of the amount of money, not exceeding $13,000, which, in their judgment, will be required for the support of the poor of the city for the ensuing year, and such money is raised by the city for such purpose; so that the responsibility and liability and the duty to raise money for the support of the poor in the city rests finally upon the municipal corporation, and not upon the commissioners of the alms-house.

The judgment should, therefore, be affirmed, with costs.

PRATT, J., concurred; BARNARD, P. J., not sitting.

Judgment overruling demurrer to complaint affirmed, with costs.